**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kendall Drake, et al., | No. CV-14-00670-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Eloy, City of, et al., | |
| Defendants. | |

Defendants filed a motion for reconsideration (Doc. 117) of portions of the Court's October 21, 2015 order (Doc. 115) granting in part and denying in part their motions for summary judgment against Plaintiffs Kendall Drake and Greg Hunter. The motion is fully briefed, and no party has requested oral argument. Docs. 121, 124. For the reasons that follow, the Court will deny the motion.

**I.    Legal Standard.**

Motions for reconsideration are disfavored and should be granted only in rare circumstances. *Collins v. D.R. Horton, Inc.*, 252 F. Supp. 2d 936, 938 (D. Ariz. 2003). A motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the Court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1); *see Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Mere disagreement with an order is an insufficient basis for reconsideration. *See Ross v. Arpaio*, No. CV-05-04177-PHX-MHM, 2008 WL

1776502, at *2 (D. Ariz. Apr. 15, 2008). Nor should reconsideration be used to ask the Court to rethink its analysis. *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998); *see N.W. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925-26 (9th Cir. 1988).

**II.     Analysis.**

Defendants argue that the Court should reconsider the portions of its October 21, 2015 order addressing (1) Plaintiffs' constructive discharge claims, and (2) Drake's whistleblower claim.

**A.     Plaintiffs' Constructive Discharge Claims.**

As discussed in the October 21, 2015 order, constructive discharge is not a stand-alone claim. *See* Doc. 115 at 19-20. Because Plaintiffs' First Amendment retaliation claims and Drake's whistleblower claim survived summary judgment, the Court was required to analyze Plaintiffs' constructive discharge claims in both contexts. *See id.* at 20-22. Defendants' motion for reconsideration addresses only Plaintiffs' constructive discharge claims based on First Amendment retaliation; it does not discuss Arizona's constructive discharge statute, A.R.S. § 23-1502. *See* Doc. 117 at 2-7. In addition, Defendants' motion only addresses facts relating to Drake's claim; it does not specifically discuss facts relating to Hunter's claim. *See id.* The Court therefore addresses only the challenged portions of its ruling.

The Court denied summary judgment on Drake's First Amendment retaliation claim and concluded that a reasonable jury could find that Drake engaged in speech protected by the First Amendment when she filed her May 22, 2013 offensive behavior complaint with the City of Eloy. *See* Doc. 115 at 9-12. Drake alleges that Defendants retaliated against her for engaging in this protected activity. In the same order, the Court summarized the evidence presented by Drake and concluded as follows:

> Plaintiffs each point to a number of Defendants' actions as creating an intolerable work environment. Drake points to essentially all of Defendants' actions since April 20, 2013, including her performance evaluations, her schedule change and its effect of depriving her of training opportunities she had been promised, the change in how she was treated by Defendants on a day-to-day basis, and, most significantly, how Defendants

handled her sexual harassment allegations against Young. . . . Standing alone, none of these actions rise to the level of constructive discharge. The Court cannot conclude, however, that a reasonable jury would be unable to find constructive discharge when they are considered in the aggregate for each Plaintiff.

Doc. 115 at 20-21 (citations omitted).

To establish constructive discharge in the Ninth Circuit, a plaintiff must show that "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (citation omitted). Generally, an isolated incident is insufficient. A plaintiff must instead establish "some aggravating factors, such as a continuous pattern of discriminatory treatment," to support a constructive discharge finding. *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411-12 (9th Cir. 1996) (citation omitted). This showing can be based on the "cumulative effect" of defendant's actions. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998). "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury." *Schnidrig*, 80 F.3d at 1411 (citation omitted).

Defendants argue that, under Ninth Circuit law, the Court committed manifest error by "holding that entirely lawful conduct can be aggregated with unlawful conduct to support a constructive discharge claim." Doc. 117 at 4. By "lawful," Defendants refer to conduct that occurred before May 22, 2013, the date of Drake's First Amendment activity. Conduct before that date could not have been in retaliation for her protected activity. Defendants contend that the Court erred by including such conduct in the evidence a jury could consider when deciding whether Drake's working conditions became intolerable – in effect, dropping "the requirement that the actions constituting constructive discharge be intolerable <u>and</u> unlawful." *Id.* at 5 (emphasis in original).

But Drake has identified several actions that occurred after her May 22, 2013 complaint that could be viewed as retaliatory. *See* Doc. 115 at 20-21. Drake provided evidence that Defendants treated her differently from the April 20, 2013 call until she

- 3 -

ultimately resigned. Doc. 104-2 at 118. Although framed as a single incident, Defendants' treatment of Drake's sexual harassment allegations against Young actually constituted a number of discrete actions – and inactions – by Defendants. On June 2, 2013, Young sent Drake a series of inappropriate text messages. Doc. 89-4 at 86-88. The next day, Drake took leave to undergo foot surgery. Doc. 89-2 at 3, ¶ 3. Drake reported Young's harassment the following week, and he was placed on administrative leave and then suspended without pay for 40 hours and removed from the list of promotion-eligible officers. Docs. 89-3 at 24; 89-4 at 44-45, ¶¶ 8-13. Although Drake expressed concern that Young's punishment was too lenient, the Eloy City Manager did not modify it. Doc. 104-6 at 36. When Drake returned to work, Defendants attempted to alter Drake's and Young's schedules to minimize overlap. Doc. 89-4 at 45, ¶ 13. In September, Drake had several negative interactions with Young. Docs. 104-1 at 18-21, 46-50; 104-6 at 51-53. In one incident, Drake was asked to leave the squad room where she was completing a report so Young could turn in his equipment and reports for a shift for another law enforcement agency. Doc. 104-6 at 38. In another incident, Young sat extremely close to Drake and "leered at [her] breasts . . . with this creepy smirk on his face." Doc. 89-3 at 42-44. Drake resigned shortly thereafter. Doc. 89-2 at 3, ¶ 3.

Drake thus has presented evidence that the following events occurred after she complained to the Attorney General: Defendants treated her differently, she was sexually harassed by Young, Defendants took insufficient actions in response, Young's continued employment at the department caused Drake difficulties, and Young's continued sexual harassment led to her resignation. Viewing this evidence in the light most favorable to Drake and drawing all reasonable inferences in her favor, the Court finds that a jury could conclude that a reasonable person in Drake's position would have been forced to quit because of intolerable and unlawful working conditions. *Draper*, 147 F.3d at 1110; *Schnidrig*, 80 F.3d at 1411-12. To be sure, a reasonable jury could reach the opposite conclusion as well – Drake's post-complaint evidence of intolerable working conditions is not compelling. But the Court finds it sufficient to create a factual question for the

jury. *Schnidrig*, 80 F.3d at 1411. The Court correctly denied summary judgment on this claim.

### B. Drake's Whistleblower Claim.

Defendants argue that the Court should reconsider its order denying summary judgment on Drake's whistleblower claim for two reasons.

First, Defendants assert that because "no claim for constructive discharge can be based on aggregating lawful acts with a single potentially unlawful act, this claim lacks the required element that Drake was subjected to a 'personnel action' as a 'reprisal' for submitting her complaint to the Arizona Attorney General." Doc. 117 at 8. This is essentially a restatement of Defendants' first grounds for reconsideration of Plaintiffs' constructive discharge claim. For the reasons stated above, the Court declines to reconsider this ruling.

Second, Defendants contend that they could not have constructively discharged Drake in response to her Attorney General complaint because the undisputed evidence shows that the individual Defendants were not aware of that complaint. *Id.* at 8-9. But Defendants did not make this argument in their summary judgment motion. Defendants devoted ten pages of their 35-page brief to Plaintiffs' whistleblower claim, and yet never argued in those pages that the claim failed because Defendants were unaware of her complaint to the Attorney General. Doc. 88 at 18-27. Defendants did make a passing reference to this fact in the factual portion of their First Amendment argument (*id.* at 13), but this was the sum total of their assertion: "she filed a complaint with the Attorney General on May 24, 2013 (of which none of the Defendants was aware, [*see* SOF 14])." Defendants did not argue in their motion that their lack of awareness continued beyond May 24, 2013, nor did they argue that this fact had any effect on either the First Amendment claim or the whistleblower claim. And Defendants made no mention of this issue in their reply. *See* Doc. 110 at 7-9.

Courts need not consider matters "that are not specifically and distinctly argued" in a party's brief, *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir. 1986),

and may refuse to address claims argued only "in passing," *Brownfield v. City of Yakima*, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010). "Judges are not like pigs, hunting for truffles buried in briefs." *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 487-88 (9th Cir. 2010) (quotation marks and citations omitted).

Defendants' statement of facts asserts that they did not know of Drake's complaint to the Attorney General. Doc. 89 at 3, ¶ 14. But, as noted, this factual assertion was not linked to any argument in the motion about the whistleblower claim, and the Court was not required to find it and craft an argument for Defendants. *Smith v. Marsh*, 194 F.3d 1045, 1052 n.5 (9th Cir. 1999) ("the district court was under no obligation to take factual claims made by the parties and fashion them into legal arguments").

Having failed to raise this argument clearly in their summary judgment briefing, Defendants cannot raise it now. Motions for reconsideration are not the place for parties to make new arguments not raised in their original briefs. *N.W. Acceptance Corp.*, 841 F.2d at 925-26.

**IT IS ORDERED:**

1. Defendants' motion for reconsideration (Doc. 117) is **denied**.
2. The Court will re-set the final pretrial conference by separate order.

Dated this 6th day of January, 2016.

_____
David G. Campbell
United States District Judge